## ELIAS RIDGE v. STATE.

No. A-4502.    Opinion Filed Dec. 18, 1923.
(220 Pac. 965.)

(Syllabus.)

1.    Infants—Prosecution of Delinquent Under 14 for Capital Offense to be Conducted with Deliberation—Infant Without Parent or Next Friend not Allowed to Waive Substantial Rules of Procedure. Where a delinquent child under the age of 14 years is charged with a capital offense, the proceedings in the juvenile court and at the preliminary trial and in the district court should be conducted with deliberation, giving the accused the benefit of every substantial rule of procedure in his favor.

    a. An infant defendant, without parent, guardian, or next friend, should not be permitted to waive such rights unless it appears beyond all doubt that the child comprehends the import and effect of such waiver.

2.    Same—Infant Under 14 Convicted of Murder Entitled to New Trial for Noncompliance with Statutory Procedure. Where an infant charged with murder was in the juvenile court adjudicated a delinquent child, and then accorded a preliminary hearing before a magistrate, and tried and sentenced to death in the district court all in one day, this, considered with other facts appearing of record, indicates that the accused was deprived of the benefits of several statutory rules of procedure designed for his protection, as pointed out in the opinion.

Appeal from District Court, Mayes County; A. C. Brewster, Judge.

Elias Ridge was convicted of murder, and he appeals. Reversed and remanded.

J. B. Dudley, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Plaintiff in error, Elias Ridge, was by information filed in the district court of Mayes county on September 12, 1922, charged with the murder of Mrs. Willie Adair on August 8, 1922. On the same day he entered his plea of guilty, whereupon the court adjudged him guilty as

charged and fixed his punishment at death by electrocution on Friday, the 17th day of November, 1922. The execution of this sentence has been from time to time postponed by the Governor, but plaintiff in error is still in the death cell at McAlester, awaiting the execution of such sentence. From this judgment the plaintiff in error, by W. D. Mathews, former commissioner of charities and corrections of the state of Oklahoma, as his next friend, has appealed to this court.

The record discloses that Elias Ridge is a black boy, and that on August 8, 1922, the day of the homicide, he was 13 years and 8 months old; that the deceased, Mrs. Willie Adair, on the afternoon of that day was alone with her two children, attending to her domestic duties about her house, near where the accused was staying with his uncle, Hardy Smith, a negro tenant on the place; that while Mrs. Adair was at or near the back door of her home the accused committed a brutal assault upon her with a knife, an iron bar, and a stick of wood; from the wounds so inflicted she soon thereafter expired.

In a confession later made by the accused to the county attorney and others he admitted making the assault. The provocation or motive for the crime was that he was directed to kill the deceased by Hardy Smith, for which Hardy Smith promised to give him a pig and possibly other minor considerations. At first the accused denied having had anything to do with the commission of the crime, and he assisted others in searching for the murderer.

On September 12th, the day that the information was filed, the record shows that the defendant, Elias Ridge, was present in person, and both sides announced ready for trial, whereupon the county attorney requested that the court appoint an attorney for the defendant, and the court, in compli-

ance with such request, appointed Mr. A. W. Fisher, who accepted the appointment. The accused was then furnished a copy of the information, with the names of the state's witnesses indorsed thereon. After the information was read and a copy handed to the accused the court informed him that he had a right to a trial by jury; the accused stood mute, and the attorney appointed to represent him announced that his client was ready to be arraigned and plead at once. The attorney then made this statement:

"I have talked with the boy, and he told me very frankly and plainly just what he did and all the circumstances, and in my opinion there was but one thing to do, and that I have done—that is, advise him to plead guilty, and that is my advice to him."

The court then inquired whether the findings of the juvenile court had been filed in the district court; upon being advised that such findings had not yet been filed in the district court, an order was made that the proceedings had in the juvenile court be filed, and this was accordingly done. These findings were to the effect that on September 12, 1922, the accused was adjudged a delinquent child, possessed of average intelligence of a child of his age, and knowing the wrongfulness of his acts, and ordering that he should be prosecuted accordingly.

The court then accepted the plea of guilty and heard evidence from which he found that the defendant was a delinquent child, over the age of 13 years, possessed of average intelligence of a child of his age, and that at the time of the commission of the fatal assault he knew the wrongfulness of the act. The accused by his counsel then waived the time provided by law for pronouncing sentence, and the court rendered judgment upon his plea of guilty, fixing the punishment as hereinbefore stated.

A condensed recapitulation of the steps taken shows that at a hearing had in the juvenile court on September 12, 1922, Elias Ridge was adjudged to be a delinquent child, knowing the wrongfulness of his acts at the time he committed the fatal assault; that on the same day an information was filed in the district court, charging him with murder; that on the same day a purported preliminary hearing was had before the county court, in which an attorney not employed by the accused or any one for him, but later appointed by the district court, waived his preliminary hearing; that from the county court the accused was taken immediately before the district court, where this attorney was appointed to represent him; that the accused was there arraigned and on advice of his counsel pleaded guilty; that under instructions from his appointed atttorney he also waived the statutory time for the pronouncing of sentence, whereupon the accused was sentenced to die in the electric chair; that all of this was done on the 12th day of September, 1922. Every step taken, from the judicial finding in the juvenile court to the signing of the death warrant in the district court, was done between the rising and the setting of the sun.

The Constitutions of the United States and of this state guarantee a speedy trial to every person accused of crime. Undoubtedly this trial was sufficiently "speedy" to meet all constitutional requirements. But coupled with that guaranty there is another right that one accused of crime shall have a fair and impartial trial. The accused child now, through the intervention of the commissioner of charities, urges that his sentence to death herein should be modified or set aside by this court because the record, as he claims, shows that he did not have a fair and impartial trial, by reason of the waiver of several of his constitutional and statutory rights; and for the further reason that the common-law and statutory

presumptions that this 13 year old negro boy was legally and mentally incapable of committing this crime were not overcome by sufficient evidence.

The Attorney General, joined by the county attorney who prosecuted the case and other attorneys employed to aid in the prosecution, have confessed error, upon the ground that a 13 year old child, charged with a capital offense, in the absence of parent or guardian, is incapable of waiving the safeguards provided by law in criminal trials.

The circumstances surrounding this homicide were of a most depraved and revolting nature, and the perpetrator, if mentally responsible, should be dealt with in a manner befitting the gravity of the offense. But where the brutality of a murder is such as to point to the total depravity of the perpetrator under circumstances tending to excite the ire, prejudice, and passions of all who hear of the facts, it is all the more important that the accused at his trial be accorded every safeguard provided by law, eliminating as far as may be influences of popular clamor, hatred, and revenge.

The old law books abound in accounts where children of tender years were executed for murder, but in recent years a more humane policy has been followed, giving more consideration to the mentality of the child, his juvenile training or want of training, and any dominating evil influence exercised over the child by others. Even in early times Sir Mathew Hale held that where an infant of 9 years of age had confessed to the killing of another of like age and "upon examination it was found he hid the blood and body and the justice held he ought to be hanged," that "the circumstances must be required of by a jury, and the infant is not to be convicted upon his confession." 1 Hale P. C. 27.

In Hawk. P. C. (Leach's Ed.) 1, 1, it was said:

"From this supposed imbecility of mind the protective humanity of law will not, without anxious circumspection, permit an infant to be convicted on his own confession."

An infant can neither sue nor defend a suit in a civil action, and with even less propriety can an infant waive his substantial rights in a criminal proceeding, and where a court arbitrarily appoints a stranger to represent him, the person so appointed should, in a capital case, refrain from waiving any of the provisions of the statutes designed for the infant's protection, unless it appears beyond all doubt that the infant fully understands the effect and the results growing out of such waiver.

Under section 8082, Comp. St. 1921, it is provided that—

"Every child who shall have been adjudged delinquent, * * * shall continue to be a ward of the [county] court until such child shall have been discharged as such ward by order of court. * * * The court may, however, in its discretion cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime."

Even in the juvenile court this accused boy had a right to trial by jury. Section 8071, Comp. St. 1921. Since the juvenile court hearing was had the same day the several different steps of the trial were had in the district court, it is probable that no jury was summoned, and no waiver appears.

Hardy Smith, the uncle and the real instigator of this crime, has since been convicted and his punishment fixed at life imprisonment. It hardly seems right that this boy of immature years and understanding should suffer death, where several of his substantial rights were waived, and where there was such a want of due deliberation at the trial.

From all that appears in the record we conclude that neither the spirit nor the letter of the law has been followed in these proceedings, and that the confession of error by the Attorney General should be sustained.

The conviction is therefore set aside, and the cause remanded for a new trial. The warden of the penitentiary is directed to deliver the plaintiff in error into the custody of the sheriff of Mayes county, who will hold him in custody subject to further proceedings according to law.

MATSON, P. J., and DOYLE, J., concur.