STATE OF NORTH DAKOTA, Respondent, v. GOTHA SCHELIN, Alleged Delinquent Child of Gus Schelin, Appellant.

(230 N. W. 9.)

Opinion filed March 31, 1930.

*P. D. Norton,* for appellant.

*James Morris,* Attorney General, *Harold Shaft,* Assistant Attorney General, and *B. A. Dickinson,* State's Attorney, for respondent.

388

BIRDZELL, J. The record before this court shows that the defendant and appellant, Gus Schelin, was summoned by the juvenile commissioner to appear before the district court of Ward County at 10 A. M., July 3, 1929, and required to have and produce at the time and place indicated the defendant Gotha Schelin. The defendants appeared personally and by attorney at the time and place indicated in the summons and a hearing was had before the juvenile commissioner. It appears, however, in the transcript of the testimony taken that the district judge participated to some extent in the examination. The only witness examined, aside from the defendants, was the petitioner Daisy DuBord, a police woman. It does not appear who called Daisy DuBord or the defendants to testify, save as all were examined in the first instance by the juvenile commissioner before whom the hearing was had and whatever examination was conducted by the attorney for the defendants is referred to in the transcript as cross-examination. It does not appear whether the defendants were given an opportunity to produce additional witnesses nor that they requested the privilege of doing so. At the conclusion of the hearing the defendants' attorney moved for dismissal of the proceedings on the ground that the defendant Gotha Schelin was not shown to have been a delinquent child and that Gus Schelin was not shown to have been unable or unwilling to properly care and provide for her. After the hearing before the commissioner but on the same day, the matter came on for hearing before the district judge. At that time the defendants asked for further time to prepare for the hearing and stated that it was desired to offer testimony for the purpose of showing that Gotha Schelin was not a delinquent child and for the purpose of showing that her father was a proper person to care for her. This request was denied and the following order was signed the same day:

"The above-entitled matter having come on for final hearing upon the report and recommendation of the Juvenile Commissioner and all of the defendants being personally present, and present by counsel, and arguments being had and the court being fully advised the court finds that the defendant, Gus Schelin is an unfit and improper guardian of Gotha Schelin; that she is a delinquent child and should be confined in the State Training School at Mandan. She was seventeen years old the 20th of November, 1929. Now, therefore, it is

"Ordered that said Gotha Schelin be confined in the State Training School until she shall arrive at the age of twenty-one years, to-wit: until November 20th, 1932.

"It is further ordered that the Superintendent of the Training School be and he hereby is appointed guardian of said Gotha Schelin for the purpose of carrying out this order.

"Dated at Minot, North Dakota, this 3rd day of July, 1929.

"By the Court,

"Jno. C. Lowe, District Judge."

The order bears no file mark but is nevertheless certified to this court by the clerk as a part of the record on an appeal. In the notice of appeal this order is referred to as "the judgment and sentence imposed by the district court on the 3d day of July 1929." Under date of March 5, 1930, the clerk of the district court certified to this court as additional files in the action a petition in juvenile court and a summons. The petition is signed by Daisy M. DuBord and sworn to before the juvenile commissioner of Ward county on the 17th day of June, 1929. It bears a file mark indicating that it was filed in the office of the clerk of the district court of Ward county March 3, 1930. Upon this petition the summons signed by the juvenile commissioner was issued. It bears a return showing service by the petitioner upon Gus Schelin, parent of the alleged delinquent on the 1st day of July, 1929. It likewise bears the file mark of the clerk of the district court dated March 3, 1930.

Under the statute which was in force at the time of the institution of these proceedings, section 11428a1, 1925 Supplement to the Compiled Laws of 1913, a proceeding or action brought as was this is "deemed pending in the district court of such county from the time of filing the complaint in said court until finally disposed of by the district judge." This statute was amended, as were several additional sections of the juvenile court act, by chapter 113 of the Session Laws of 1929, which amendment went into effect on July 1, 1929. We shall assume here that the amendments had no effect upon any proceedings prior to the hearing, but we shall nevertheless refer to some provisions of the new act, as they may lead to a better understanding of the procedure in such a matter. Section 3 of chapter 113, Laws of 1929, provides for the initiation of a proceeding under the act looking towards

the placing of a delinquent child under the guardianship of some person to be appointed by the court by a petition made by any person having knowledge of the facts, including the commissioner. This statute provides (§ 3): "The petition shall be filed with the clerk of court when, and only when, the district judge shall indorse thereon that it shall be so filed." (The petition in question bears no indorsement.) This section further provides that when the petition is presented to the court "the district judge shall by order indorsed upon the petition fix the time and place for the hearing upon said petition and therein direct that summons be issued returnable accordingly. The action thus commenced shall be deemed pending in the juvenile court of such county from the time of the making of said order until final disposition. Hearings thereon may be had as directed by the judge, either at the county seat of the county in which the venue is laid, or at the chambers of the judge. All orders made by the court therein, whether or not the child has been committed to a state institution, shall be subject to the further orders of the court made either upon hearings had or upon the motion of the court or the judge thereof. Any order having the effect of removing the child from the care and control of his parents, guardian or custodian, shall be based upon evidence taken at the hearing on said petition, and upon findings of fact made therefrom by the district judge, that the parent, parents, custodian or guardian of such child are unfit or improper guardians, or are unable or are unwilling to care for, protect, train, educate, correct, control and discipline such child, or that the parent, parents, guardian or custodian consent that such child be taken from them."

In addition to the above provisions governing the procedure in the district or juvenile courts, § 4 of the amended act authorizes the appointment of juvenile commissioners and empowers them to receive complaints, issue warrants for the arrest of persons thereon, to examine fully into the merits of each case, to issue subpœnas, compel the attendance of witnesses before them, et cetera, "and generally have the usual powers of a referee as provided by article 7 of chapter 11 of the Code of Civil Procedure for the trial of civil actions, in addition to the powers herein specifically given." This section further provides a procedure to be followed when the juvenile commissioner or commissioners shall be of the opinion that "a final order for the custody or control of

such child or children becomes necessary, either by sending the same to the state training school or other institution of this state; or to deprive the parents of their custody, and give the same to some other person or persons, . . . ." It makes it "the duty of such commissioners to make findings and report the same with their recommendations to the district judge, who shall fix a reasonable time and place for hearing, and thereafter make such final judgment or order in the case as he shall deem proper and right." These amendatory provisions, adopted in 1929, were in effect at the time of the hearing in this cause but not at the time the proceedings were instituted.

The hearing before the juvenile commissioner was not a hearing before the judge of the district court and of the juvenile court. The record does not show that any evidence was ever heard by the district judge except such as he heard in response to a few questions asked by him during the hearing before the juvenile commissioner. The record does not show affirmatively that the district judge was present throughout this hearing, nor does it show that the juvenile commissioner was acting as a referee under § 4 of chapter 113, Laws of 1929. From the various provisions of the juvenile court law, to which reference has been made, it seems clear the legislature never contemplated that the juvenile commissioner should have any authority to change permanently the natural guardianship of a child, or to make anything more than a temporary order affecting its custody or control, and it is equally clear that these acts do not disclose any legislative intention that orders of such moment should be made by a judge of the district court who is also the judge of the juvenile court, except at the end of a hearing. This, of course, means a hearing conducted in accordance with due process of law where the interested parties shall be permitted to hear the evidence against them and be given an opportunity to refute it. This matter was never referred by the court to the commissioner in such a manner that he acted as a referee. For aught that appears the commissioner took only such testimony as she desired to take for her own information preliminary to making a report to the court. It seems that the testimony taken by her was not transcribed until after the instant appeal was taken and it was not before the court at the time the order in question was made. There was no testimony before the court upon which appropriate findings could have been made. It was clearly

prejudicial error to deny to the defendant opportunity to refute the charge of delinquency and of lack of capacity for proper parental custody. It is unnecessary to enlarge upon what this court said in Re Solberg, 52 N. D. 518, 203 N. W. 898, regarding the necessity for a hearing and for findings in proceedings of this character. The record shows such a clear departure from the orderly proceedings outlined in the governing statutes and such a complete lack of a hearing in accordance with due process of law that the judgment of commitment cannot be allowed to stand.

While the reversal in the instant case is based upon the substantial irregularities previously noted with regard to the hearing, it is not to be assumed that the record is in other respects approved. We have .called attention to that provision of § 3 of chapter 113, Session Laws of 1929, which provides that the petition shall be filed with the clerk of court when and only when the district judge shall indorse thereon that it shall be so filed, and we have pointed out wherein the judgment roll in the instant proceeding shows that the petition was not filed with the clerk until long after the appeal had been taken to this court. Of course, this statute is not to be construed as authorizing the withholding from the court files such basic jurisdictional papers as the petition and summons after the rendition of a judgment authorizing the commitment of a child to the state training school and depriving a parent of custody. A judgment roll should be made up in accordance with § 7688, Compiled Laws of 1913, and the sections following. The papers should be filed and the separate book known as the Juvenile Court Record should be kept as required by § 2 of chapter 113, Session Laws of 1929. The evident purpose of withholding the petition from the files until the district judge shall make an indorsement thereon is to obviate embarrassment incident to a court record if the case calls for no change of status, but when such a proceeding has progressed to the point where radical measures seem to be called for which must be expressed in the judgment of the court, a record must be made showing the basic jurisdictional facts and the judgment rendered.

Judgment reversed.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.