In the Matter of the Habeas Corpus of
Robert Arthur SMITH, Petitioner.
No. A–12613.

Criminal Court of Appeals of Oklahoma.
May 28, 1958.

Ralph Samara, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., H. B. King, County Atty., Woodward County, Woodward, for respondent.

BRETT, Presiding Judge.

This is an original verified petition for habeas corpus for bail and an amended verified supplement thereto alleging denial of due process of law, brought by Robert Arthur Smith, as petitioner, through counsel, Ralph Samara, of Oklahoma City, Oklahoma. The petition, as amended, alleges, in substance, that the petitioner is being unlawfully held without bail on the charges by information of having committed murder in two cases, pending in the District Court of Woodward County, Oklahoma, the same being No. 1531 and No. 1532, respectively. It is further alleged that because of the tender age of the petitioner, he being of the age of 12 years and 9 months, the petitioner was unable to distinguish right from wrong and appreciate the consequences of his acts. Further, it is alleged that the petitioner was adjudged a juvenile delinquent on March 27, 1958, in the Juvenile Court of Woodward County, in an irregular unconstitutional proceeding where the petitioner was denied the right of confrontation of witnesses against him in that unsworn statements were received against him. Moreover, he asserts no sworn testimony was heard on the issue of his mental capacity, no medical examination was had of petitioner to aid the Juvenile Court in its determination thereof, and that the court's findng of juvenile delinquency and of legal capacity is unsupported by any competent evidence sufficient to sustain the same. It is further alleged, that the petitioner, because of his tender years, would not receive the death penalty or life imprisonment. He then urges the petitioner was denied the right of trial by jury as provided by statute, 10 O.S.1951 § 102, and no official transcript was made thereof, said hearing being informally conducted. In substance, the petitioner prayed

for dismissal of the criminal charges in the District Court for lack of jurisdiction and his return to the custody of the Juvenile Court for guidance and rehabilitation.

To this petition, Sheriff White of Woodward County, in whose custody petitioner is now restrained, made response. Among the things alleged in said response are, in substance, the following: That he detains Robert Arthur Smith in the county jail awaiting trial by reason of an order of the Juvenile Court adjudging the petitioner a juvenile delinquent by reason of having committed the crimes of burglary, armed robbery, and murder, the Juvenile Court having found said juvenile is able to distinguish right from wrong and appreciate the consequences of his acts; that petitioner was certified by said Juvenile Court as an adult for trial and bound over after preliminary hearing on April 4, 1958, before a committing magistrate, to the District Court wherein petitioner was charged by information to answer for his alleged crimes. On April 10, petitioner was arraigned before Hon. Tom Blaine, who thereafter heard petition for habeas corpus, which was denied, and respondent holds petitioner in custody to await trial or further order of the courts.

Upon these pleadings, rule to show cause was entered for hearing on May 15, 1958. In addition thereto, Sheriff White was directed to produce the petitioner at the expense of petitioner in Oklahoma City not later than the morning of May 12, 1958, and hold him in the County Jail for examination by Dr. Harold Binder, a psychiatrist of petitioner's choice, for testimony at the hearing.

Offered in support of the Sheriff's custody was the order of the Juvenile Court adjudging petitioner a juvenile delinquent. No formal transcript of the proceedings therein was made and hence was not available. Attached to the response of the Sheriff was the information charging petitioner with murder and a transcript of the proceeding at the preliminary hearing before the committing magistrate, Hon. H. M. Welch. Attached thereto are certain interrogatory statements of various persons in re the killings and other alleged acts of criminality of the petitioner. The record is silent as to proof of capacity of petitioner other than the unsupported findings of the Juvenile Court.

At the hearing in this Court, the petitioner refused to take the witness stand and submit to cross-examination upon the facts of the alleged killings. It is thus apparent under the previous holdings of this Court petitioner has not sustained the burden entitling him to bail. In Ex parte Adams, 27 Okl.Cr. 123, 225 P. 188, 189, this Court held:

"* * * the burden of proof, after commitment is on the accused on an application for bail, where the charge is a capital offense, and the petitioner is required to show facts sufficient to entitle him to bail when those facts do not appear from the evidence offered on the part of the state on the preliminary examination, * * *. In re Leggett, 12 Okl.Cr. 11, 150 P. 1121; Ex parte Looper, 12 Okl.Cr. 437, 158 P. 290."

Further, in Ex parte Smith, 31 Okl.Cr. 132, 237 P. 464, 465, we held:

"To show this the petitioner should take the stand at the preliminary hearing, or at the hearing on the application for bail, and submit to cross-examination, disclosing the nature of his defense. Ordinarily, ex parte affidavits are inadequate for this purpose."

On the contention that because of his tender years petitioner would not be sentenced to death or life imprisonment, such an assertion is overly presumptious. It is akin to the assumption of some of our young juveniles that nothing can be done in relation to their criminal acts because they are juveniles. Let all who entertain such false idea take note of Ridge v. State, 28 Okl.Cr. 150, 229 P. 649, wherein the defendant, Ridge, who was less than 14 years of age, was certified as a juvenile delinquent, tried on a charge of murder, his punishment

was fixed by the jury at death in the electric chair, and was modified by this Court to life imprisonment. In light of this grave precedent, we could not hold this petitioner, who took the lives of two persons, would not be dealt with accordingly at the hands of a jury. On the foregoing premises, bail was denied.

■■ On the question of the denial of due process of law, this Court is of the opinion that the contention is meritorious. From the transcript attached to the Sheriff's response, it does not appear that any formal transcript of the juvenile proceedings was taken or preserved, hence there is no record upon which this Court can determine the extent and nature of the inquiry relative to the protection of the petitioner's rights and the basis of the determination of his mental capacity to appreciate the wrongfulness of his acts. Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367. The record makes it clear that no expert medical evidence based upon observation and examination as provided in the Mental Health Law was presented to the Juvenile Court. 43A O.S. 1955 Supp. § 60 provides:

"If any person is held in confinement because of criminal charges, or if he has criminal charges pending or likely to be filed against him, or if he has been taken into custody because of a criminal act or acts, and the question arises as to his sanity or state of mental health, such individual may be ordered by a court of record having jurisdiction of the criminal proceedings into a State hospital within the Department for observation for a period not to exceed ninety (90) days."

■■ At the hearing in this Court, lay witnesses were sworn and heard on the question of the petitioner's capacity to distinguish between right and wrong. Said lay witnesses testified the petitioner was capable of distinguishing between right and wrong but was unable to evaluate the consequences of his act. Dr. Harold Binder, a qualified psychiatrist, testified to the same effect. The testimony of experts, however, is by no means conclusive on the issue of mental capacity. Hodges v. State, 16 Okl. Cr. 183, 182 P. 260; Kobyluk v. State, 94 Okl.Cr. 73, 231 P.2d 388. In the latter case the trial court's finding based upon the testimony of lay witnesses prevailed over that of two psychiatrists. The reason being the law makes no distinction in weighing evidence between expert testimony and evidence of other character in a criminal prosecution. Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812. While such evidence may not be conclusive, its value should not be overlooked. In cases such as this, the question of mental capacity would be for the jury or the court under 10 O.S.1951 § 102.

■ We are of the opinion rules of procedure in a juvenile proceeding, where the life and liberty of the juvenile delinquent is at stake should be measured by the gravity of the situation and the exigencies the case may impel. The ordinary rules established and the regular processes provided to produce evidence and to aid the court in testing and weighing it are not to be scrapped because the proceeding is a summary one and finding of facts must not rest upon hearsay. In re Mantell, 157 Neb. 900, 62 N. W.2d 308, 43 A.L.R.2d 1122. Certainly a juvenile should be subjected to no less protection than an adult. The law throws every safeguard around the rights of an accused adult and his enjoyment of those rights. Among these rights is that of being able to perfect a record of the proceedings for review on appeal. In civil proceedings affecting property rights of a child, every right is safeguarded lest the child become the victim of oppression and skullduggery. Records of such proceedings are meticulously preserved. Should we observe any less concern for a child's life and liberty than we do for his property? Should he be subject to what a record of the hearing might disclose was in the nature of a Star Chamber proceeding? The answer obviously should be, no. Yet, in cases of this kind, the failure of the statute to spell out the proceedings permits less caution than it provides in civil cases on the matter of recording the proceedings. In Juvenile Courts the proceed-

ings may be conducted in such an informal manner with no transcript required to be made that what was done becomes a matter of mere conjecture, surmise, and guess. Without a record of the proceedings, upon what basis can a rational adjudication by review of the petitioner's rights be predicated? Not to require the making of a formal record in such cases subjects the child to an exercise of arbitrary will, whim, or caprice of the judge, with no record upon which to attack it. We cannot reconcile such procedure with the orderly processes associated with the law. The procedural formalities of a trial contribute to the substance of the law by giving it design and symmetry, stability and permanence.

The Juvenile Court herein is not to be criticized, for it had no procedure prescribed by statute. The statutes provide no rules for handling such cases but provide that ordinarily juvenile cases may be heard in private and in a summary manner. In the absence of such provisions, we must chart the course, distasteful as judicial legislation may appear. Here, there is no other alternative. Our reluctance so to do is overcome by the facts of necessity and because we are prescribing a rule of procedure in the face of ambiguity in the statute. Certainly no graver concern can confront a juvenile court than that of certification of a child for prosecution for the crime of murder. Judge Bessey said in Ridge v. State, 25 Okl.Cr. 396, 220 P. 965:

> "Where a delinquent child under the age of 14 years is charged with a capital offense, the proceedings in the juvenile court and at the preliminary trial and in the district court should be conducted with deliberation, giving the accused the benefit of every substantial rule of procedure in his favor."

Due process, in such cases, dictates that the court should determine the issues of such cases according to established rules of law. Process is available in the Juvenile Act and the Mental Health Law to bring witnesses before the hearing to determine the vital issues, and a final order of certification of a juvenile for trial on a murder charge should not be based upon details privately whispered to the judge in chambers or conducted in a manner not open to inquiry for lack of a record. We doubt the wisdom of the statute which provides for informal private hearing, particularly in a matter of a child who may be charged with murder. The door to inquiry in such proceedings should never be closed, and in such proceedings only where the moving finger writes are permanent records available for inquiry. In re Hill, 78 Cal.App. 23, 247 P. 591. We are of the opinion that on so grave a charge as herein involved, a wayward minor is entitled to all the safeguards surrounding trials, People v. Harris, 132 Misc. 741, 230 N.Y.S. 767; Ridge v. State, supra, including the record of the sworn testimony of the witnesses taken at the hearing. People v. Slater, 176 Misc. 641, 29 N.Y.S.2d 164; State v. Schelin, 59 N.D. 386, 230 N.W. 9. This, notwithstanding the ambiguity of the statutes. Juvenile Courts are directed to so conduct their hearings where the commission of serious crimes are involved.

Finally, we are of the opinion that the proceedings subsequent to the filing of the petitioner for juvenile delinquency should be and are hereby ordered vacated and set aside, the criminal information in the District Court dismissed, and the Juvenile Court directed to continue its jurisdiction and rehear the matter in due and proper form, preserving a record of the said proceedings and observing all the rules of substantial trial procedure therein. It is further ordered that Robert Arthur Smith be confined in a State Hospital for the Insane for observation and examination, not to exceed 90 days, and evidence thereon be given before the Juvenile Court. The writ of habeas corpus granting the relief as above set forth is accordingly granted, and otherwise, is denied.

POWELL and NIX, JJ., concur.