[Civ. No. 5177. Second Appellate District, Division Two.—May 11, 1926.]

## In the Matter of NADINE HILL, a Minor.

[1] JUVENILE COURT ACT—FINDINGS OF FACT—MANDATORY STATUTE—APPEAL.—Section 2 of the Juvenile Court Act, which provides that when any person under the age of twenty-one years shall be found by the court or judge to come within the terms of any of subdivisions 1 to 13, inclusive, of section 1 of said act "the court shall in its judgment make a finding of the facts upon which the court exercises its jurisdiction over such person as a ward of the juvenile court," is mandatory in its requirements; and where the record on appeal from an order adjudging a minor to be a ward of the juvenile court is certified as containing a full, true, and correct transcript of all documents and minute orders with the exception of subpoena writs, and such record embraces no finding of fact, the judgment must be reversed.

[2] ID.—INTERESTED PARTIES—RIGHTS OF PARENTS—ADVICE OF COUNSEL.—In a proceeding under the Juvenile Court Act to have a minor declared a ward of the juvenile court, the parents of the minor are sufficiently interested parties to entitle them to be present to protect their interests, as well as those of the child, and to this end they may produce evidence and cross-examine witnesses, may

appeal from the final orders adversely affecting their claims, and may be advised and represented by counsel.

[3] ID. — SEPARATION OF PARENTS AND CHILD — EVIDENCE — RULES OF PROCEDURE.—While the state has the right to remove a minor child from its parents' custody, the relations of parent and child should not be severed or disturbed unless the facts justify it, and the interests of all parties concerned require that these facts be shown by evidence whose verity has been carefully and legally tested; and, while the exact truth should be searched out and all mere technicalities of procedure as distinguished from rules which protect substantial rights should be disregarded, the regular processes of the law provided to produce evidence, and the ordinary rules established to aid courts in testing and weighing it, are not scrapped because the proceeding is a summary one.

[4] ID.—HEARSAY—COMPULSORY ATTENDANCE OF WITNESSES.—In a proceeding under the Juvenile Court Act to have a minor declared a ward of the juvenile court, a final order adjudging said minor to be such ward cannot be based upon details whispered privately to the judge in chambers, but the persons possessing knowledge of the facts should be required to come forward at the time of the hearing and give their testimony; and if they are reticent to do so, they can be brought to the hearing upon citation.

(1) 31 C. J., p. 1104, n. 91.  (2) 31 C. J., p. 1104, n. 90.  (3) 31 C. J., p. 1104, n. 91 New; 29 Cyc., p. 1595, n. 87.  (4) 31 C. J., p. 1104, n. 91 New.

APPEAL from a judgment of the Superior Court of Kern County, declaring a minor a ward of the Juvenile Court. Erwin W. Owen, Judge. Reversed.

The facts are stated in the opinion of the court.

George M. Cook for Appellants.

H. E. Schmidt, District Attorney, and Dorsey & Campbell for Respondent.

CRAIG, J.—It appears that a petition was filed in the superior court of Kern County sitting in special session as a juvenile court, which asked that Nadine Hill be declared a dependent child under subdivision 4 of section 1 of the Juvenile Court Act (Stats. 1915, p. 1225).  Cruelty

3.  See 14 Cal. Jur. 145.

of the mother was alleged in the petition as the ground for the child being declared dependent. A hearing was held on June 22, 1925, and thereafter on the same day the following order was entered: " . . . Hearing and examination closed and good cause appearing therefor, it is by the court ordered that said Nadine Hill be and she is hereby declared to be a ward of the juvenile court, and is remanded to the custody of C. P. Badger, Probation Officer of Kern County, until further order of the court."

A notice of appeal was filed by the father and mother of the child, purporting to be "from the order or judgment heretofore made and entered in said superior court on the 22nd day of June, 1925, wherein the said Nadine Hill was adjudged to be a ward of the juvenile court, and from the whole thereof."

Counsel for respondent expresses doubt as to what action or order of the trial court the appeal is taken from, but we think it is evident that the intention was to appeal from the order above quoted.

[1] One ground urged by the appellants involves error of such a character as to require a reversal. The record which is certified as containing "a full, true and correct transcript of all documents and minute order with exception of subpoena writs" embraces no finding of fact. Section 2 of the Juvenile Court Act provides: "When any person under the age of twenty-one years alleged to come within the provisions of any of subdivisions 1 to 13 inclusive of section 1 of this act shall be found by said court or judge to come within the terms of any of said subdivisions as alleged, the court shall in its judgment *make a finding of the facts* upon which the court exercises its jurisdiction over such person as a ward of the juvenile court; and the court shall thereupon make such order or orders, *in accordance with said findings,* as may be necessary for the care of said ward of the juvenile court; . . . "

The law is clear and mandatory in its requirement that the findings of fact be made as a foundation for any judgment declaring a minor to be a ward of the juvenile court. Such was the holding in *In re Brodie,* 33 Cal. App. 751 [166 Pac. 605]. The point there dealt with another section of the same law, but the same requirement is found therein

as in section 2. For this error we think the judgment must be reversed.

[2] During the proceeding herein the court directed the sheriff to remove from the courtroom Mr. George M. Cook, who stated that he was present representing Ellsworth Hill, the father of the child, Nadine Hill. This occurred immediately after Hill had been sworn as a witness at the instance of the court and had refused to answer questions, stating that he did so on the advice of counsel because it might subject him to criminal prosecution. The court stated that this was a proceeding in which no attorney may appear as a matter of right, and said: "I will thank you, Mr. Cook, never again to appear in any juvenile case before me, Mr. Cook."

Under the Juvenile Court Act, section 4, it is provided that upon the filing of the petition citation shall issue requiring the persons having the custody or control of the minor to produce the latter, and, further, that the parents shall be cited and required to attend the hearing. Section 4 makes the failure to comply with such citation a contempt of court. The act authorizes the court to make the minor a ward and to deprive the parents of its custody; also to require the parents to make such payments as may be necessary for its support, and to punish for contempt of court any disobedience or interference with enforcement of orders on the part of the parents. It authorizes the parents to require the hearing to be private, and the right of the parents to be present at the hearing is not only recognized, but special provision is made by which such attendance may be compelled. Being present at the hearing and in nearly all cases having unusual opportunity for knowledge of the issues involved, it may reasonably be assumed that they would be asked to be sworn as witnesses. We have no doubt that in a proceeding of this nature the parents are sufficiently interested parties to entitle them to be present to protect their interests, as well as those of the child. To this end it is clear that they may produce evidence and cross-examine witnesses, may appeal from the final orders adversely affecting their claims, and may be advised and represented by counsel.

[3] While the right of the state to remove the child from its parents' custody is unquestioned, as also is the proposi-

tion that in a proceeding for that purpose the most vital question is the child's own good and the best interests of the state as they are involved in the child's welfare, it must be remembered that the family and its relations have ever been recognized as the foundation of society. What a man may lawfully do in the protection of his own personal security and life he may, and indeed it is his duty to do, in the defense of his children. The common law has always upheld the sanctity of the home, the sacredness of parental rights, and the corresponding seriousness of parental obligations. When a parent is derelict in the performance of his duties toward his child, or abuses his trust as its guardian, he should undoubtedly forfeit such trust and be removed from the guardianship. But the charge that there has been an abuse of trust by the parent cannot be regarded lightly. No action affecting rights of property, personal liberty, or security involves issues more worthy of judicial consideration and entitled to judicial determination than a proceeding affecting the custody of a little child, involving as it may the molding of its character for good or for ill. No claims of the parent should stand in the way of his removal from its control if such drastic action is for the welfare of the child. On the other hand, a normal parent's devotion, care, and guidance are invaluable, and can seldom be replaced. The relations of parent and child should not be severed or disturbed unless the facts justify it, and the interests of all parties concerned require that these facts be shown by evidence whose verity has been carefully and legally tested. And so, while the exact truth should be searched out and all mere technicalities of procedure as distinguished from the rules which protect substantial rights should be disregarded, the regular processes of the law provided to produce evidence, and the ordinary rules established to aid courts in testing and weighing it, are not scrapped because the proceeding is a summary one.

[4] In the instant case the process of the law was available to bring witnesses into court, and it should have been used for that purpose. If persons secretly informed the judge that the parents' home was not a fit place for this child, and if their information was reliable and of any value, these persons must have known facts which would warrant that conclusion. It was their duty to come forward and in a

manly or womanly fashion give their testimony, so that this helpless infant might be withdrawn from danger and cruelty. But details whispered privately to a judge in chambers cannot be basis of a final order. The more serious the accusation the greater the need that it be carefully tested, and to that end that no one interested be denied the right of cross-examination.

If it be true, as some of the evidence included in the transcript indicates, and as the people who talked to the judge privately may have said, that Mrs. Hill shamefully abused Nadine, it is exceedingly unfortunate that a rehearing should be required. But consequences fraught with far greater evil would inevitably result from the sanction of judicial abuses of the character here presented; and if witnesses were reticent about appearing and testifying, they could easily have been brought to the hearing upon citation, which process the law expressly authorizes the court to issue.

It may be added that we are not required to pass upon the question as to whether or not the law might authorize a final order making a minor a ward of the juvenile court based upon hearsay evidence or statements made to the judge out of court, nor to say that the law might not deprive parents of the right to counsel. The authority of the legislature to enact such laws is not involved, for the Juvenile Court Law of this state contains no such provision. It unmistakably recognizes that the parents have rights and are interested parties. It provides for the hearing and the reception of evidence, and contemplates an order based upon such evidence. It expressly preserves the right of appeal, and broadens the authority of the appellate court in reviewing the evidence on appeal so that the weight of the evidence may be considered and the order sustained or reversed according to the preponderance of the evidence. The spirit of the entire law is exemplified by the language of section 15f, which reads as follows:

"On the return of the citation or other process, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case, after full and careful consideration of all the evidence presented and with due regard to the legitimate rights and claims of the parent or parents of said person, and with due regard to any and all ties of blood or

affection, but with the dominant purpose of serving the best interests of said persons."

We find no other points which require consideration. The judgment is reversed, and the matter remanded to the juvenile court for rehearing.

Finlayson, P. J., and Works, J., concurred.