[Crim. No. 2288. Third Dist. June 20, 1951.]

In re EDWINA MOILANEN, on Habeas Corpus.

Winters & Winters for Petitioner.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondents.

ADAMS, P. J.—This proceeding was instituted by the filing in the Supreme Court of a petition for a writ of habeas corpus to secure the release of Edwina Moilanen, a minor, from the

Solano County Detention Home. The Supreme Court issued the writ, making same returnable before this court.

The petition alleged that Edwina Moilanen was a resident of San Diego County, aged 16 years; that Lyyti Moilanen is the parent of said minor, and entitled to her custody under a decree of the Circuit Court of the State of Oregon for the county of Multnomah, dated February 8, 1947, reaffirmed on October 25, 1950; that on April 5, 1951, Mrs. Moilanen and the child came to Sacramento to visit friends; that Edwina was ill and was there left with these friends while her mother went to Fairfield to consult with one Christine Watson regarding the pregnancy of Edwina, believed to have been caused by Ray Watson, husband of said Christine; that Lyyti was arrested in Fairfield charged with attempted extortion from Mrs. Watson; that Edwina was taken into custody in Sacramento by the Chief of Police of Fairfield and forcibly taken to Fairfield; that a verified petition was filed in Solano County by the deputy probation officer, to make Edwina a ward of the juvenile court of Solano County; that said petition alleged that Mrs. Moilanen (under the name of Marlene Carroll) was the parent of Edwina, and that her address was Solano County jail, Fairfield; that on April 13th Robert K. Winters, who had been retained by the mother to act as counsel for her daughter, applied to the matron of the detention home to consult with Edwina, stating that he had been so employed, but was refused permission to see or consult with said minor; that on April 20th a hearing was held by the juvenile court without the knowledge of said attorney or any notice to him though he had advised the court, the district attorney and the probation officer of his retention to act as counsel for said minor; that Lyyti Moilanen was not present at said hearing and was not served with any citation or notified of the time or place of said hearing; that the record of the court contains no return of service on the mother, nor a copy of any notice served upon her; that the county probation officer knew that Lyyti asserted a right to custody of Edwina; that Lyyti was confined in a building adjoining the courthouse, but was not given notice of said hearing nor an opportunity to be present; that the Superior Court of Solano County, sitting as a juvenile court, was without jurisdiction to issue its order of April 20th making Edwina a ward of said court because she was not a resident of Solano County, and had been brought within the county for the purpose of attempting to give the court jurisdiction over her, and because Lyyti Moilanen, in

whose custody Edwina had been placed by the court of a sister state, was not notified of said hearing, and was not present or represented by counsel thereat.

In compliance with the writ of habeas corpus respondents produced Edwina before this court and filed an answer and return in which it was alleged that the minor was being restrained by them by virtue of an order and commitment of the juvenile court, copy of which was attached to the said answer and return and made a part thereof. It was then asserted that the petition for the writ does not state facts sufficient to justify the relief prayed for, or any relief cognizable in a proceeding in habeas corpus. The allegations of the petition were not denied.

By the foregoing demurrer respondents admitted the truth of the facts set forth in the petition, including the fact of parentage, the failure to serve said parent, etc. We overruled said demurrer, whereupon, over the objection of the deputy attorney general who, together with a deputy district attorney of Solano County, represented respondent, petitioner introduced evidence which established the facts asserted in the petition. An authenticated copy of a decree of the Circuit Court of Multnomah County, Oregon, established that in a divorce decree there rendered on February 6, 1947, in an action between Lyyti K. Moilanen and Edwin Moilanen, the custody of Edwina Mae Moilanen, "the minor daughter of the parties," was awarded to the mother, with an order for payment to her of support money for the child; and subsequent orders amended the requirement for monthly payments by Edwin Moilanen, the latest one being dated October 25, 1950.

A certified "copy of the proceedings" in the juvenile court was introduced by respondents. It contains the following documents: A "Request and Order for Detention," both request and order being dated April 6th. The request, signed "Jule O. Pritchard by Rita Warford, Deputy Assistant" recites that a petition had been filed in the juvenile court of the county of Solano; that Edwina was a person in need of detention pending hearing and *because* of "further investigation" as to who had custody and control of said minor; but it alleged that the mother was Marlene Carroll; also that "Parent or guardian, or person with whom said minor was last living, had [been] notified concerning the request for detention." An order of the court recited that it being for the best interests of the child, she be detained in Solano County

juvenile hall pending further hearing and disposition by the court. Bail was fixed at $500 cash or surety bond.

The request and order, though dated April 6th, are stamped filed April 7th. On April 7th a verified petition by Rita Warford was filed in said juvenile court which set forth, among other things, that "there is now residing within the County of Solano," the above named Edwina Moilanen; and, on information and belief, "That the said Edwina Moilanen is in danger of leading an immoral life in that she has had sexual intercourse with a married man within the past, approximately three months period, and she has, in addition thereto, had sexual intercourse with two other persons since reaching her fifteenth birthday." Also that so far as known the name and residence of the parents, guardian, relatives of said alleged ward residing in said county are: "Mother: Marlene Carroll. Address: Solano County Jail, Fairfield, California."

Also, as a part of said record there was included an unverified typewritten statement signed by Jule O. Pritchard, Probation Officer, filed April 23d. The only other document in said record is the order of commitment, copy of which was attached to respondents' return. There is nothing to show upon what evidence, if any, the court acted.

The report of the probation officer, after stating facts pertaining to the arrest of Marlene Carroll, recited that: "For further investigation of this case, Chief of Police, Rex Clift, went to Sacramento, California, to the address of 2835-38th Street, the home of one Ben *Tottila,* and picked up and brought to Solano County, the said girl in question, Edwina Mae Moilanen." It further stated that upon questioning Edwina regarding the extortion charge placed against Marlene Carroll, the chief of police believed that the said Edwina was leading an idle and dissolute life, and "placed the said Edwina Mae *Molianen* in the Solano County Juvenile Hall and notified your Probation Officer of same." Then followed a discussion of possible previous delinquencies of the minor, and expressions of uncertainty on the part of the probation officer as to whether or not the minor was in fact the child of Marlene Carroll; also, a recital of purported statements made by the minor when questioned at the detention home. The report further stated that since Edwina had been placed in the juvenile hall she had not been allowed any visitors. The recommendaton of the officer was that the case be continued in order that the officer have further time to ascertain the true facts about the girl, her parentage and her legal residence,

stating in conclusion that Marlene Carroll was to be tried in the superior court and Edwina might be called as a witness in that case. He recommended that if the court did not continue the matter, the minor be committed to the California Youth Authority. This was not done.

The commitment, which consists mainly of a printed form and which is dated April 20th, recites the following, only the portions italicized being typed into the form:

"The above named *minor, Edwina Mae Molianen,* having been regularly brought before the above entitled Court on this *20th* day of *April,* 1951, upon the petition filed herein as required by law, and it appearing to the Court that due and legal notice of the hearing of said matter has been given in all respects as required by law to the parties entitled thereto; and testimony having been duly taken in said matter and the Court finds that said person was born *May 10th, 1934* and comes within the provisions of subdivision *K* of Section 700 of said Juvenile Court Law of the State of California and that the welfare of said person requires that said person be declared a ward of the Juvenile Court.

"Now, therefore, it is hereby expressly found that all the statements of fact contained in said petition and herein set forth are true."

Then follows an order declaring the minor to be a ward of the juvenile court of Solano County, ordering that she be placed on probation under the care of the probation officer until she shall have reached the age of 21 years or discharged by order of the court, that she be committed to the Solano County juvenile hall until further order of the court, and that she not be permitted to have visitors without a written order of the court.

The statement of said order that "it appearing to the Court that due and legal notice of the hearing of said matter has been given in all respects as required by law to the parties entitled thereto," was relied upon by counsel for respondents as conclusive upon this court at the hearing before us, and as precluding us from hearing any testimony which would show that, in fact, no notice was served upon the mother of the child or anyone else and that there was no waiver of notice.

We overruled the objection and testimony was adduced by both parties. Counsel for respondents admitted that Lyyti Moilanen (Marlene Carroll) was not present before the juvenile court at the hearing there; and that no citation was issued. Also it should be noted that the finding of the court

that all the statements of fact contained in the petition are true, constituted a finding that the statements in the petition that Marlene Carroll is the mother of the child and that her address was the Solano County jail were true.

With the consent of counsel for respondents the minor, Edwina, was called as a witness, as was Hilma Toppila, the friend of Mrs. Moilanen with whom Edwina was staying in Sacramento. Summarizing their testimony it shows, without contradiction, that in the evening of April 5th, about 9 o'clock, Rex Clift, Chief of Police of Fairfield, accompanied by his wife and one or two Sacramento police officers, came to the place of employment of Mrs. Toppila, told her that they had to take her as a material witness in a case against Marlene Carroll, and took her in a police car to her home where Edwina was asleep in bed. Mrs. Toppila, having been told by the chief of police that he had to pick Edwina up and take her, asked to be permitted to tell the child, which she did. She told Edwina that she would have to go to Fairfield, as her mother was in trouble, whereupon Edwina dressed and joined the officers. They stated that she would not have to take a bag, because she wouldn't stay that long, whereupon all were taken to the Sacramento police station, and from there the chief and his wife took the child to Fairfield. There Edwina was questioned by Mr. Raftery, the deputy district attorney, in the presence of the chief and his wife and a court reporter, and then taken to the juvenile hall in Fairfield and detained there without being allowed to see her mother.

Mrs. Moilanen, called as a witness, testified that she was never served with any papers to appear in court on April 20th; that she was not present when her daughter was made a ward and did not know anything about it until it was all over; that she had been awarded Edwina's custody in a divorce proceeding in Oregon; that prior to her arrest in Fairfield her address and that of her daughter was San Diego; that she had never lived in Solano County, nor been in the county before she was arrested except to stop at a gas station to make a telephone call on her way to Sacramento.

Chief of Police Rex Clift, called as a witness for respondents, stated that he came to Sacramento, after it had been decided upon by Mr. Raftery, to talk to Edwina; that he took her to Fairfield because "It was necessary, statement against her mother. There was a question she was pregnant. When I came up and found a possibility of being pregnant I wanted her to talk before the Court Reporter"; that "it was vital to

my case." He said that he did not disclose to Edwina the real purpose of his visit, which was to question her as a possible witness in the prosecution against her mother; and that he had no warrant of arrest or other process.

Jule O. Pritchard, Chief Probation Officer of Solano County, called as a witness by respondent, stated that he had talked to Edwina in the detention home, and to Marlene Carroll in jail, in an endeavor to find out the girl's parentage. He also produced a letter given to him by Marlene to be delivered to Edwina, which he had failed to deliver and which was offered in evidence, and admitted subject to a future ruling as to its admissibility. He admitted that he knew during the hearing in the juvenile court of the divorce decree in Oregon awarding the custody of Edwina to her mother, Lyyti Moilanen, on February 10, 1947, and ordering the father, Edwin Moilanen, to pay $75 per month for the child's support.

Rita Warford, called by respondents, testified that she remembered that Mr. Pritchard read to the court at the hearing on April 20th extracts from a letter from the father of the minor, but what they were does not appear.

From what precedes, certain things stand out clearly, to wit: that the minor was not a resident of Solano County, nor was she "found" within it. She was taken there from Sacramento, without process or authority of any kind, for the purpose of securing a statement from her by the assistant district attorney and the chief of police to aid them in the prosecution of her mother. Having brought her into the county for the aforesaid purpose she was then detained by resorting to juvenile court proceedings, in order that she would be available as a witness. No notice to the child's mother, be she parent or guardian, was given of the juvenile court proceedings which terminated in an order declaring the minor a ward of the court; and there was no finding such as is required by section 739 of the Welfare and Institutions Code, before a court may deprive a parent of the custody of her child. In 76 American Law Reports 247, it is said: "It has been uniformly held in cases based on statute and principle, that a parent cannot be deprived of the custody of a child in commitment proceedings, without notice and an opportunity to be heard." (Citing *Ex parte Becknell*, 119 Cal. 496 [51 P. 692], and *In re Hill*, 78 Cal.App. 23 [247 P. 591], and cases from other jurisdictions.)

However well intentioned public authorities may be in proceedings regarding wayward minors, the fact remains

that such children should not be deprived of their liberty, nor their parents deprived of their children, without due process of law. Parents, guardians or others in whose custody a minor child may be found, are entitled to notice of hearings in proceedings instituted for the purpose of separating children from custodians, and such notice has been declared in numerous cases to be a jurisdictional requirement.

In *In re Creely,* 70 Cal.App.2d 186, 190 [160 P.2d 870], it was said that ''Due process of law requires sufficient notice to the parents with an opportunity for them to be heard.'' That such notice is jurisdictional was also held by this court in *In re Spiers,* 15 Cal.App.2d 487 [59 P.2d 838], *People* v. *Spiers,* 17 Cal.App.2d 477, 485 [62 P.2d 414], and in *In re Staser,* 84 Cal.App.2d 746, 753 [191 P.2d 791], and by the Supreme Court in *In re Etherington,* 35 Cal.2d 863, 867 [221 P.2d 942].

Respondents say, however, that, even conceding that such service of notice is jurisdictional, where the order of the court contains the language hereinbefore set forth regarding service, the contrary may not be shown by testimony dehors the record made in the lower court. We cannot accede to that contention. While, in the absence of evidence to the contrary, the validity of an order of court will be presumed, a mere recital in such an order regarding the jurisdictional fact of service of notice, to wit: ''that due and legal notice of the hearing of said matter has been given in all respects as required by law to the parties entitled thereto,'' does not preclude a showing in a habeas corpus proceeding of the fact that no notice at all was given to the mother, guardian or any other person having custody of said child. In the first place, such an allegation is a pure conclusion or recital; the words are weasel words. Whether it purports to find that no notice was necessary, or that it was given to someone not named, or whether no notice was given to anyone because there was no one entitled thereto is left to speculation.

In recent years the scope of matters which may be shown on hearings in habeas corpus proceedings has been definitely broadened. In *Mooney* v. *Holohan,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406], the United States Supreme Court held that where in a petition for a writ of habeas corpus it was alleged that conviction of a person charged with crime had been secured by the use of perjured testimony known to the prosecuting authorities to be perjured, there was a sufficient allegation of lack of due process to justify

inquiry into the facts in a habeas corpus proceeding. It did not, itself, proceed to take such testimony, but denied the writ without prejudice, relegating the petitioner to the courts of the state for a writ, based upon the grounds stated in the one then before it, saying: "No decision of the Supreme Court of California has been brought to our attention holding that the state court is without power to issue this historic remedial process when it appears that one is deprived of his liberty without due process of law in violation of the Constitution of the United States." Following the suggestion of the United States Supreme Court, proceedings in habeas corpus were instituted in the Supreme Court of California, and there prolonged and extensive testimony was taken, and the matter given a full hearing. (*In re Mooney*, 10 Cal.2d 1 [73 P.2d 554].) . Certainly if the grounds stated in the Mooney petition showed lack of due process justifying review in habeas corpus proceedings, lack of due process because of failure to secure jurisdiction would appear to be so reviewable.

Further expansion of the function of habeas corpus proceedings in this state is evidenced by the decisions in *In re McVickers*, 29 Cal.2d 264 [176 P.2d 40], and *In re Seeley*, 29 Cal.2d 294 [176 P.2d 24], in neither of which due process was involved. Also see statement in *People* v. *Adamson*, 34 Cal.2d 320, at page 327 [210 P.2d 13], that: "With expansion of the function of habeas corpus in this state, an application for that writ has become the proper remedy to attack collaterally a judgment of conviction which has been obtained in violation of fundamental constitutional rights." This court has clearly given recognition to the right of a petitioner for a writ of habeas corpus to show, if he can, that there has been a failure to observe the requirements of due notice in cases under the juvenile court law, as against a recital in a judgment that due and legal notice has been given to all persons entitled thereto, or similar language. While in the Staser case, *supra*, the writ of habeas corpus was discharged, it was not discharged because the order of the juvenile court recited that due notice was given to all parties entitled thereto, but because petitioner failed to show that the mother of the minor was not served with a citation. The opinion states, page 753: "We assume that the issuance and service of a citation upon the mother 24 hours before the hearing were a necessary prerequisite to confer jurisdiction on the court (*People* v. *Spiers*, 17 Cal.App.2d 477, 484 [62 P.2d 414]; Welf. & Inst. Code, § 726), although that failure may be waived by personal

appearance of the mother at the hearing, and without objection on that ground. (*People* v. *Spiers, supra.*) No evidence was adduced at the habeas corpus proceeding to show whether the citation was issued or whether the mother was or was not present at the hearing in the juvenile court. The petitioner's attorney did state that he wanted to call the mother as a witness for that purpose, but he failed to do so." Also, page 754: "For the reason that the petitioner, Thelma Hynes, failed to sustain the burden cast upon her to prove that the citation was not issued and served on her at least 24 hours before the hearing and that she did not appear and waive due notice thereof, we are constrained to hold that the order adjudging the minor to be a ward of the court is adequately supported by the record."

In *In re Bell,* 19 Cal.2d 488, 500-501, 502 [122 P.2d 22], the court said that while a habeas corpus proceeding is in the nature of a collateral attack, and carries with it a *presumption* of regularity, such presumption is not conclusive; that a petitioner seeking habeas corpus is not confined to the face of the record in attempting to sustain the burden of proving his conviction was in violation of his constitutional rights; and that the courts of the United States and California have declared that the remedy of habeas corpus permits an examination not only of the actual evidence introduced at his trial but of any necessary additional evidence bearing upon the infringement of his constitutional rights, citing *In re Mooney, supra,* as holding that an examination of facts outside the record, to determine whether petitioner was denied due process of law, was proper.

In the Etherington case, *supra,* the court's decision is to the effect that notice is a jurisdictional prerequisite in a juvenile court proceeding; but that, as in that case the cause was continued at the request of the mother of the child and she then appeared and participated in the hearing, she thus waived the requirement of 24 hours' notice. But the decision implies that had there been no such appearance and waiver there would have been no jurisdiction to proceed, since it was undisputed that the prerequisite notice had not been given to her.

The said minor, Edwina Mae Moilanen, is hereby released and discharged from custody, and ordered returned to her mother, Lyyti K. Moilanen, also known as Marlene Carroll.

Peek, J., concurred.

VAN DYKE, J.—I dissent.

At the outset it was contended by respondents that habeas corpus being a collateral attack upon the judgment of the juvenile court, we must test the validity thereof solely by an inspection of the record. Evidence was taken by this court over objection, touching the truth of the findings on jurisdiction, but obviously if the objection be sound the case must be disposed of without regard to such evidence. I think the objection was good. To clarify the issue, however, it may be proper to say that this evidence did show, without contradiction, that Lyyti Moilanen, whom the petition alleged to be the mother of the minor, was at all times confined in the Solano County jail as alleged in the petition; that no citation was issued directed to her, that no notice of any sort was given to her of the pendency of the proceedings, nor opportunity to appear thereat, and that she did not appear.

The petition in the juvenile court proceedings which initiated the same contains in brief the following allegations: That Edwina is 16 years of age and not an inmate of any state institution; that she comes under the provisions of subdivision (k) of section 700 of the Welfare and Institutions Code (the Juvenile Court Law) as being a person in danger of leading an immoral life; that she resides in Solona County; that her mother is Marlene Carroll; that the mother resides in Solano County and is in that county's jail. Petitioner prays that a time and place for the hearing of the petition be fixed; that Marlene Carroll be cited to appear at said time and place and show cause why the minor should not be adjudged a ward of the court; and that the court at said time inquire into the truth of the matters alleged and make such order as would be meet and proper. The judgment and order of commitment recites that the minor had been regularly brought before the court on April 20, 1951, upon the petition, and that it appeared "to the court that due and legal notice of the hearing of said matter had been given in all respects in the manner required by law to the parties entitled thereto"; that testimony had been taken and that the court found that the minor was born May 10, 1934; that she came within the provisions of subdivision (k), section 700, of the Welfare and Institutions Code, and that her welfare required that she be made a ward of the juvenile court. It is expressly found that all of the statements of fact contained in the petition are true, thus finding that the minor resides in Solano County; that Marlene Carroll (stipulated herein to be the same person

as Lyyti Moilanen) is her mother; that she also resides in that county, and that her address is the Solano County jail. It is decreed that the minor be made a ward of the court and that she be placed on probation under the care of the probation officer of that county "until she shall have reached the age of 21 years or be discharged by the court." It is further ordered that she be committed to the Solano County juvenile hall until further order and that, likewise until further order, she be not permitted to have visitors without a written order of the court.

At the hearing, by stipulation of both sides and consent of the court, the petition for the writ was treated as a traverse to the return.

Proceedings to declare a person a ward of the juvenile court are governed by subdivision 2, part 1, chapter 2, article 7, of the Welfare and Institutions Code of this state. By section 720 it is declared, as to the manner of invoking the court's jurisdiction, that a person subject to the court's jurisdiction may be brought before the court by a petition praying that such person be declared the court's ward and so dealt with. Section 721 provides that the petition shall show that there is within the county, or residing therein, such person, and that the petition shall contain a statement of the facts relied upon and the names and residences of the parents or guardian of the person involved, if known to the petitioner. The petition here met these requirements and hence properly invoked the jurisdiction of the juvenile court. Section 726 requires that citation shall issue, directing such parent or guardian residing within the county to appear at a time and place theretofore fixed for hearing the petition and that service of such citation shall be made at least 24 hours before the hearing time so set. With regard to service of such citation, however, the section provides that it may be waived "by a voluntary appearance entered in the minutes" or "by a written waiver of service of citation filed with the clerk" prior to the hearing. It has been held that compliance with these provisions, where the facts are as alleged in the petition here involved, is jurisdictional and that failure to comply therewith makes void any judgment which may follow.

In a habeas corpus proceeding and where the return shows detention by virtue of the judgment of a court of general jurisdiction, the attack upon the judgment as constituting such justification for detention is a collateral attack and we must indulge in every presumption "in favor of the validity of the judgment or order of a court of general jurisdiction, and

any condition of facts consistent with its validity and not affirmatively contradicted by the *judgment roll* will be presumed to have existed. . . . Where the record is silent, it will be presumed that process and pleadings were properly served and that due proof of such service was presented to the court. . . . Similarly, notice, or facts rendering it unnecessary, are presumed unless the record shows the contrary, and when the court may shorten time or dispense with notice, it will be presumed that the court did so if the order is silent upon. the point. . . . Under this general rule it will be presumed, when necessary, that the parties consented to the court's action or waived objection thereto. For example, although there is no rendition of judgment when findings are required unless findings have been made or waived . . . , it has been held on a judgment roll appeal, where the court was limited to matters appearing on the face of the judgment roll, that a waiver of findings would be presumed unless the record affirmatively showed the contrary." (Italics added.) (*Phelan* v. *Superior Court,* 35 Cal.2d 363, 373-374 [217 P.2d 951].)

An application of the foregoing rules necessitates a holding that the record here shows jurisdiction in the Solano County Juvenile Court to make the minor Edwina Moilanen a ward of said court. All of this, of course, is not to say that the court actually had jurisdiction. But, in view of the record and of the presumptions which must be indulged, the court's action cannot be successfully attacked on habeas corpus. The remedy is by some form of direct attack, as by motion to vacate or appeal. The best that can be said for petitioner, the record only considered, is that it is silent upon the matter of how in one of the various ways possible, as by service of citation, or waiver thereof or appearance at the hearing, jurisdiction to proceed was obtained. But on these matters the recitals of the court that due notice had been given to all persons entitled thereto and that the matter had been regularly heard by the court necessitate a holding that the court had jurisdiction to proceed and to ·make the order which it did make, declaring the minor a ward of the court. (*In re Spiers,* 15 Cal.App.2d 487, 492-493 [59 P.2d 838].) In that case the court said:

". . . It was stipulated in open court that the petition should be considered as a traverse of the return, which of course leaves undetermined whether the mother of the minor was or was not present in court. Nothing else appearing, the recital of the court that due notice had been given to all persons

entitled thereto would necessitate a holding that citation had been issued and properly served.''

See, also, *In re Orosco*, 92 Cal.App.2d 352 [207 P.2d 656], and *People ex rel. Pollock* v. *Bogart*, 58 Cal.App.2d 831 [138 P.2d 360].

Concerning the contention advanced by petitioner that the court had no jurisdiction to proceed because the minor had been brought into the county by force and without warrant of law, I think that, assuming that such was done, the effect upon jurisdiction could not be determined in this proceeding. (*Matter of Maginnis*, 162 Cal. 200, 205-206 [121 P. 723].) The court there said:

''. . . The decisions in this court, so far as they go, are to the contrary. In *De la Montanya* v. *De la Montanya*, 112 Cal. 131, [44 P. 354], Temple, J., delivering the opinion of the court, says: 'I do not doubt that the mere presence of infants within the jurisdiction is sufficient to confer jurisdiction, although they may be residents of another state.'

''But it is not necessary, in the case at bar, to go into this question. The petition of Fairweather, initiating the proceedings in the juvenile court, alleges that the minor is residing in the city and county of San Francisco, and the order committing the child to the custody of the Children's Agency finds, as a fact, that this allegation is true. The petition, therefore, presented to the juvenile court a case which, under any view, was within its jurisdiction, and the court had power to decide whether the averments of jurisdictional facts were true. Its decision on the facts, however erroneous, cannot be reviewed on *habeas corpus*. The sufficiency of the evidence to sustain the finding 'is a matter into which we cannot inquire upon this writ. Under the writ, the court can only inquire into the jurisdiction to find, not into the correctness of the findings. . . .' [Cases cited.]''

One more matter should be discussed. The statute plainly requires that even though the court, in the exercise of its jurisdiction invoked by the petition, has regularly proceeded within that jurisdiction to make the subject minor a ward of the court, nevertheless where, as found by the court here, there is a parent or guardian resident within the county, the court cannot take the actual custody of the minor from such parent or guardian without finding that one or more of the statutory conditions, set forth in section 739 of the code, justify such change in custody.

It has been held that the making of such a finding is a

jurisdictional requisite and that an order made without that act having been performed, which order takes the custody from the parent or guardian under such circumstances as are presented by the record here, renders the order to that extent void. The result of that would be that if that finding was not made the detention of Edwina Moilanen by the probation officer would be illegal and she would have to be discharged from that custody. What does the record show? First, the order of commitment contains no such finding, expressly, nor do I think that any of the language thereof can be said to impliedly embrace such finding. The recital that the minor was regularly brought before the court refers only to the main proceeding looking toward making her a ward of the court. The recital as to notice being given the mother goes no further than the matter to which it expressly refers. The finding that the minor comes within the provisions of subdivision (k) of section 700 of the Welfare and Institutions Code is of no aid and the same must be said of the finding that the welfare of the minor required that she be made a ward. The finding that the allegations of the petition are true likewise does not reach the question here. Nor does the order, itself, committing the ward to the custody of the probation officer, affect the inquiry, for if no such finding was made in fact, and the record should so show either affirmatively or presumptively, then the order itself is no order at all. But the result of all this is simply to declare that the record is silent upon the issue of whether or not such finding was in fact made and under such circumstances the presumption comes to the aid of the order and the order is valid, as against the attack here made.

I have no quarrel with that part of the majority opinion which asserts that in the particulars therein mentioned the traditional scope of the writ of habeas corpus has been extended. However, I think that the cases referred to do not warrant what seems to me to be a new and very extensive broadening of the scope of the writ. If the writ can be used as it is here being used, then I think that mischievous results will follow. What has been done is to declare that, notwithstanding the trial court has passed upon the facts touching its jurisdiction to proceed and has declared in the record that those jurisdictional facts exist, the truth of the findings may be reviewed upon habeas corpus and that in doing so evidence may be taken contrary to the findings and a new determination be made upon habeas corpus as to whether or not the findings

of the court were wrong in fact. If this can be done in this collateral proceeding, then I anticipate that such indirect attacks will become common. No effective limitations of time will be available and the judgments of courts will be made insecure.

I would discharge the writ.

Respondent's petition for a hearing by the Supreme Court was denied July 19, 1951. Gibson, C. J., and Edmonds, J., voted for a hearing.