IN RE THOMAS E. BARKUS, A MINOR.
STATE OF NEBRASKA EX REL. EUGENE F. FITZGERALD, COUNTY ATTORNEY OF DOUGLAS COUNTY, NEBRASKA, APPELLEE, V. THOMAS E. BARKUS, APPELLANT.
95 N. W. 2d 674

Filed March 27, 1959. No. 34438.

*Schrempp & Lathrop,* for appellant.

*Clarence S. Beck,* Attorney General, and *John E. Wenstrand,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This was an action which was commenced on September 10, 1957, in the district court for Douglas County, Nebraska, juvenile division, entitled "An Inquiry into the case of Barkus, Thomas E., a Minor Child," wherein by petition it was charged that Barkus, under the age of 18 years, was a delinquent in that on or about August 16, 1957, he trespassed on the railroad right-of-way of the Union Pacific Railroad Company near Ninety-sixth and F Streets, Omaha, Douglas County, Nebraska, and that he placed a cement block or slab on the track of said railroad which was later struck by a moving Union Pacific train.

On this petition a hearing was had in the juvenile court on September 17, 1957. The case was taken under advisement and on October 29, 1957, Barkus was ordered

committed to the Boys Training School, Kearney, Nebraska, until he reaches the age of 21 years, unless sooner paroled or otherwise disposed of according to law.

On October 29, 1957, a motion for new trial was filed based upon numerous alleged assignments of error. This motion was heard on February 14, 1958, at which time evidence was adduced on behalf of Barkus. The motion was overruled. From the order overruling the motion Barkus has appealed. There is one assignment of error. It is the following: "The Court erred in committing the minor child to the State Training School when the said child had committed one foolish or indiscrete (sic) act, and was not a habitual violator, and needed no further correction."

This assignment of error in and of itself would not furnish a basis for any disturbance of the order. The record however is of such a character that in the interest of justice and the rights of persons who have not attained the age of 18 years, error not assigned requires careful consideration. This record will be reviewed therefore in the light of the following rule: "Under section 25-1919, R. R. S. 1943, and Revised Rules of the Supreme Court, Rule 8 a2(4), consideration of the cause on appeal is limited to errors assigned and discussed, except that the court may, at its option, note a plain error not assigned." Dell v. City of Lincoln, *ante* p. 174, 95 N. W. 2d 336. See, also, Hartman v. Hartmann, 150 Neb. 565, 35 N. W. 2d 482; Romans v. Bowen, 164 Neb. 209, 82 N. W. 2d 13.

In clarification of this premise it should be said that if what was received and considered by the court as proof of the guilt of Barkus was proper to be considered there would be nothing of which just complaint could be made here, except possibly the severity of the order. This is true since the literal purport and effect thereof was in proof of the allegations of the petition.

In truth statements of Barkus which came before the court admitted the acts charged.

In this case however the question of primary importance is that of whether or not the procedure employed to obtain the evidence and the manner of presentation were such as to be so violative of established rules relating to trials as to render the order invalid and to require a reversal of the order of commitment. In other words, the primary question is that of whether or not Barkus had a fair trial and not that of whether or not there was evidence of Barkus' guilt.

In the recent case of Krell v. Mantell, 157 Neb. 900, 62 N. W. 2d 308, 43 A. L. R. 2d 1122, this court called attention to and condemned certain procedural incidents as destructive of the right to a fair trial and on that account reversed an order of the juvenile court committing Anthony Mantell to the Boys Training School at Kearney, Nebraska. One of these incidents was the use of hearsay and unsworn testimony of witnesses for the complainant over objection of the defendant.

As to this incident of hearsay and unsworn testimony this court quoted with approval in Krell v. Mantell, *supra*, the following from In re Matter of Hill, 78 Cal. App. 23, 247 P. 591: "The relations of parent and child should not be severed or disturbed unless the facts justify it, and the interests of all parties concerned require that these facts be shown by evidence whose verity has been carefully and legally tested. And so, while the exact truth should be searched out and all mere technicalities of procedure as distinguished from the rules which protect substantial rights should be disregarded, the regular processes of the law provided to produce evidence, and the ordinary rules established to aid courts in testing and weighing it, are not scrapped because the proceeding is a summary one."

As to procedure in general related to trials of juveniles, this court, in the same case, quoted with

approval the following from People v. Lewis, 260 N. Y. 171, 183 N. E. 353, 86 A. L. R. 1001: "To serve the social purpose for which the Children's Court was created, provision is made in the statute for wide investigation before, during and after the hearing. But that investigation is clinical in its nature. Its results are not to be used as legal evidence where there is an issue of fact to be tried. When it is said that even in cases of lawbreaking delinquency constitutional safeguards and the technical procedure of the law may be disregarded, there is no implication that a purely socialized trial of a specific issue may properly or legally be had. The contrary is true. There must be a reasonably definite charge. The customary rules of evidence shown by long experience as essential to getting at the truth with reasonable certainty in civil trials must be adhered to. The finding of fact must rest on the preponderance of evidence adduced under those rules."

In the present case unsworn statements of three witnesses were admitted as testimony and, according to remarks contained in the bill of exceptions, they were considered by the trial judge in arriving at the judgment. These statements were not taken at any legally recognizable hearing. They were in the form of questions propounded by a deputy county attorney with answers of the purported witnesses. They were taken in the presence of a probation officer, not in court, and they do not purport to be depositions. In the record the statements have been referred to as evidence taken at a preliminary hearing. This is not true since when they were taken no charge had even been filed against Barkus. They were taken on August 22, 1957, whereas, as pointed out, the petition was not filed until September 10, 1957. No legal foundation whatever was laid for the admission of the statements. They were nothing more than reports of an ex parte investigation and inadmissible. As to such reports this court, in Ripley v. Godden, 158 Neb. 246, 63 N. W. 2d 151, said: "Re-

ports of an ex parte investigation made by investigators from the police department and the Child Welfare Department are not competent evidence and may not be considered by the court in the hearing and decision of a disputed issue of fact."

It is true that no objection was made to the admission of the statements. It is also true that Barkus was not represented at the trial. His mother, a widow, was present. The order of commitment recites that the mother had been summoned as provided by law but there is nothing in the transcript to disclose the issuance of summons or service thereof on her as required by law. Section 43-206, R. R. S. 1943, requires that on filing a complaint summons shall issue requiring the person having custody or control of the child to appear at the time stated in the summons, which time shall not be less than 24 hours after service. There is no information as to whether or not Barkus or his mother had an opportunity to obtain or desired representation at the hearing. Likewise there is no information as to whether or not they had any advice from the county attorney or anyone connected with the juvenile court as to their legal rights or the consequences which could flow from the proceeding.

Apparently without informing Barkus or his mother of their rights at the trial Barkus was called by the deputy county attorney as the first witness to testify against himself. His evidence thus adduced was the only evidence to support the participation of Barkus in the incident charged in the petition except that contained in the statements taken on August 22, 1957, and introduced in the manner hereinbefore described.

Presumably the trial was conducted in the manner described under the mistaken notion that it was permissible under the terms of section 43-206, R. R. S. 1943, in part as follows: "* * * the court shall proceed to hear and dispose of the case in a summary manner." It was clearly pointed out in Krell v. Mantell, *supra,*

that the provision of the statute imported and implied no such legislative intention. It was pointed out in unmistakable terms that "to hear and dispose of the case in a summary manner" did not mean that trials could be had in the juvenile court in such manner as to destroy the traditional and constitutional safeguards of a trial. The Legislature did not intend that trials should be had without the benefit of testimony of witnesses given under the sanction of oath or affirmation. It did not mean to say that the liberty of a child has less sanctity than that of an adult.

In Ripley v. Godden, *supra*, it was said: "The essential processes, rules, and procedure of the law established and observed to aid courts in the investigation and adjudication of contested issues of fact are not discarded or permitted to be disregarded because a pertinent statute refers to the proceeding as a summary one."

The record here manifests the same type of intolerable disregard for the rights of persons under the age of 18 years in proceedings in and under the processes of the Juvenile Court Act as was condemned in positive and unequivocal terms in Krell v. Mantell, *supra,* and Ripley v. Godden, *supra.* The conclusion inevitably reached therefore is that the processes employed were so violative of the intent of the Legislature in the adoption of the Juvenile Court Act, and the legal, constitutional, and traditional rights incident to a fair trial that the judgment of commitment rendered in this case cannot be allowed to stand. Accordingly it is reversed.

REVERSED.

MESSMORE, J., participating on briefs.