[Civ. No. 3954. Fourth Dist. Sept. 29, 1949.]

In re JOHN WESLEY HARTMAN, a Minor, etc. THE PEOPLE, Respondent, v. JOHN WESLEY HARTMAN et al., Appellants.

Edgar B. Hervey, M. M. Sattinger and Henry F. Walker for Appellants.

Don C. Bitler, District Attorney, and Charles F. Sturdevant, Jr., Deputy District Attorney, for Respondent.

GRIFFIN, Acting P. J.—John W. Hartman, aged 14, and two other minors, were originally charged by grand jury indictment with the crime of involuntary manslaughter in that they did, on June 11, 1948, kill one Jose Inez Estrada, aged 9 years. The case was transferred to the juvenile court for hearing and after taking evidence the juvenile court de-

clared all of the minors wards of the court. Hartman was placed in the custody of his mother and stepfather.

A verified petition was signed by the probation officer alleging in detail the acts committed and that such acts violated sections 245, 187 and 192 of the Penal Code, and that said minors were persons coming within the provisions of section 700(m) of the Welfare and Institutions Code.

After hearing, three orders were made: 1. An order adjudging the minor to be a ward of the court under section 700, subdivision (m) of the Welfare and Institutions Code; 2. An order entitled commitment to probation officer; and 3. An order entitled order of probation. John W. Hartman and his parents Walter J. Hartman and Mrs. Walter J. Hartman appealed from these orders.

The evidence shows that the ward's father owned a 20-acre grapefruit grove located about three-fourths of a mile north of the Mexican border in Imperial County; that constant marauding of the grove by Mexican Nationals caused a loss of approximately one-half of its crop, and warning signs, both in English and Spanish, were posted in an effort to prevent the trespassing; that nevertheless the trespassers continued to take fruit from the grove and eventually, after the date of the indictment, the owner dug up one-half of the orchard nearest the border. The Hartmans and the adjoining owner, on many occasions, ran Mexicans out of the orchard. On June 11, 1948, at about 3:30 p. m., the minors John W. Hartman, Williams Mains, William Angione and four other minors were at the Hartmen residence. They discussed the stealing of the fruit by the Mexicans and armed themselves with various weapons. The three wards here involved each had a .22 caliber rifle. Another boy had a .410 gauge shotgun and others had BB air rifles, all loaded. They set out to search the grove for trespassers. They spread out and each walked between separate rows of trees toward the south. During the course of the search an unidentified Mexican was found sitting on the ground outside of the fence which enclosed the grove. He had no grapefruit in his possession. He was questioned by the boys and told to leave. He walked off in a southeasterly direction toward a melon dump located about 1,200 feet to the southeast where cull melons were normally dumped. As he walked away several shots were fired in his general direction by the boys with the .22 caliber rifles. Shortly thereafter, a second Mexican with a sack of grapefruit was found near the south edge of the

grove. He was questioned and ordered to leave. He also walked toward the melon dump and as he did so several shots were fired from the .22 caliber rifles by the same three boys, in his general direction. A third Mexican, aged 17, was then found hiding in the grove with a sack of fruit. He wanted to retain it but the boys took it from him and ordered him to leave. After he walked a distance of about 30 meters the boys ordered him to hurry. They fired several shots in his direction with the .22 caliber rifles, some of them hitting near his feet. The boys then moved south but out of the orchard and toward the melon dump. Upon reaching a point approximately 25 yards south of the south edge of the grove they saw several Mexicans along the road near the dump. According to the boys' story these people moved out of the dump and proceeded northerly into a flax field and toward the boys and the grove. Several shots were fired from the .22 caliber rifles in the general direction towards this group of people, who immediately scattered and ran down into the bed of a stream which was a short distance south of the road. The boys continued on towards them to chase them away. Upon reaching the road they discovered the body of Estrada, in an easterly direction from that point. He had been struck and killed by a .22 caliber bullet apparently from the rifle of Angione.

According to the testimony, Estrada had come to the melon dump to obtain melons which were usually dumped there as feed for cattle. The trucks had not arrived at that time and Estrada and two other boys were playing in the vicinity of a row of sunflowers when Estrada was shot and killed. This row of flowers was near the body but between it and the orchard and was about as high as his head when he was standing. The other boy with him was struck in the arm and wounded by another bullet evidently fired from Angione's gun.

The first point argued by counsel for appellants is that the appeal taken by the parents and ward was taken by the proper parties, that it was timely, and that the orders appealed from were appealable. The question of the timely appeal has been disposed of by denying the motion to dismiss the appeal. (Hearing denied by the Supreme Court July 14, 1949.) No contention is made by respondent that the mother and father are not proper parties and entitled to appeal. (See *In re LeVan, ante,* p. 7 [207 P.2d 1066]; Welf. & Inst. Code, § 580; *In re Hill,* 78 Cal.App. 23, 26 [247 P. 591].) Likewise, respondent does not raise the

point as to the appealability of the orders. An order declaring a minor a ward of the juvenile court is appealable and any subsequent order may be appealed from as from an order after judgment. (Welf. & Inst. Code, § 580.)

█ It is next said that there were irregularities in the proceedings because the probation officer filed a petition containing reference to sections 245 and 187 of the Penal Code, as well as section 192 of that code. No authority is cited limiting the probation officer in his statement of facts in a verified petition. Since the petition contained a statement of the acts claimed to have been committed by said ward, the specification of the sections of the Penal Code denouncing those acts as crimes thereunder is not repugnant to the provisions of sections 826-827 of the Welfare and Institutions Code. These sections must be read in harmony with sections 720 et seq., of the same code.

█ It is next contended that no citation was issued and served upon the ward's parents, in compliance with section 726 of the Welfare and Institutions Code; that since there was no waiver of appearance entered in the minutes nor any written waiver of service of citation filed with the clerk, as required by section 726 of the code, the court lacked jurisdiction to hear and determine the petition. Respondent contends that, since both parents appeared with counsel and testified or were present during the entire proceedings without objecting to lack of service, they waived service of any such citation.

It has been held that where there was no showing that a citation was not issued it will be presumed that the statute was followed. (*Moore* v. *Superior Court,* 22 Cal.App. 156, 161 [133 P. 990].) The minutes of the court show that when the minor appeared in the superior court for arraignment under the indictment he appeared through counsel and moved to transfer the action to the juvenile court. The mother, Minnie W. Hartman, was sworn and examined as to the minor's age. At the first hearing in the juvenile court, according to the minutes, all persons were excluded from the courtroom except the minors and their parents, and this order was invoked throughout the hearing. After the petition was filed by the probation officer and during the hearing, the father, according to the minutes, was sworn and examined. According to the reporter's transcript, counsel for the ward asked Mrs. Hartman to take the stand and then asked that she be excused from testifying due to her ill health. The request

was granted. At the beginning of the hearing the trial judge asked the mother and father of each of the minors to be seated in the jury box so they could hear the evidence and what he had to say in his determination of the issues. He then ordered the minors made wards of the court. He informed them that parents should be more alert as to what their boys were doing and that mere boys, under no circumstances, should have deadly weapons placed in their possession and allowed to go out uncontrolled because that is a dangerous thing to do and many times results in just what happened in this case, that is, "somebody being killed," and that it could have been a much greater tragedy. The court then, in the presence of their parents, committed the boys to the supervision of the probation officer, to be placed on probation, and to remain in the homes of their respective parents and subject to their supervision. In the court's order the parents were designated by name. The minors were not to own nor carry any firearms, cross the international border line, nor drive a car without the parents being present, and were to make restitution to the parents of the Mexican boy for funeral and medical bills.

There is no question, from reading the entire record, that the parents employed counsel for the purpose of defending the minor son; that they appeared in court at every hearing and stayed through the entire proceedings and were present when the order was made making them wards. No objection was made as to service of citation at any time during the hearing and the question is now raised for the first time on appeal. Although the minutes of the court do not directly state that the parents waived notice of the hearing, it would be a strained construction to hold that these parents could now object to jurisdiction because of the failure to serve such citation on them and that the failure to do so prejudiced them in any manner. In *In re Schultz*, 99 Cal.App. 134 [277 P. 1049], it was held that the voluntary appearance of the mother being undisputed, the failure of the minutes to note a waiver of service was not prejudicial.

It is next claimed that the orders of the court are not supported by the evidence, i. e., that there was no showing of evil design, intent or culpable negligence sufficient to support a charge of involuntary manslaughter; that the minors intended no harm, but sought to prevent further trespass and theft of grapefruit by the advancing group; that the killing was the result of accident or misfortune, or that the

minor was justified in thus endeavoring to protect his father's property under the theory of lawful resistance; that since the undisputed evidence shows that the boy had no criminal tendencies or past record of misbehavior and came from a highly respected parentage with proper home surroundings, no order is sustainable which would declare him a ward of the court, and that the failure of the court to dismiss the proceedings under section 737 of the Welfare and Institutions Code was an abuse of discretion.

Under the petition, as filed, it was not necessary for the juvenile court to specifically find that the ward was guilty of involuntary manslaughter as charged. If the facts established and found were sufficient to support the petition and order making him a ward of the court, that is all that is required. The court might well have believed, as found, that such minor was a person coming within the provisions of section 700 or section 701 of the Welfare and Institutions Code in this, that these minors met for the purpose of chasing Mexicans away from the locality of the orchard, armed themselves with rifles so to do, negligently and carelessly handled and fired the rifles with reckless disregard for others, and without due caution and circumspection, and violated section 245 or section 192 of the Penal Code, as alleged, and if permitted to return to their homes without some other supervision, they might further engage in such conduct. The judge has a broad discretion in relation to these matters and his judgment will not be disturbed without some adequate showing justifying a different conclusion. There was adequate evidence to support the orders made by the court.

▇▇ Counsel for the ward argues that the findings, as made, are not sufficient under section 735 of the Welfare and Institutions Code, citing *In re Edwards*, 208 Cal. 725 [284 P. 916]; *In re Matter of Hill*, 78 Cal.App. 23 [247 P. 591]; *In re Spiers*, 15 Cal.App.2d 487 [59 P.2d 838]; and *In re Brodie*, 33 Cal.App. 751 [166 P. 605]. The written findings do not specify in detail what particular acts the minor was guilty of committing although the entire proceedings were reported. The probation officer summarized the evidence and made his recommendation and the judge acted only after a careful consideration of the entire proceedings. He did make 10 pages of ''oral findings,'' as reflected by the reporter's transcript. Under the circumstances no more specific written findings were necessary. (*In re Ortiz*, 74 Cal. App.2d 810, 813 [169 P.2d 664].) The course taken by the

minors was most unfortunate, to say the least. Nevertheless, the essential elements of the petition were established. By the wards' conduct a life was taken and it does not appear that the minors were dealt with harshly or that the court placed an unbearable stigma upon them, as argued. It appears that this ward was given every consideration and privilege and the court was within its rights in exercising control over him.

Orders affirmed.

Mussell, J., concurred.