[Civ. No. 20925.   Second Dist., Div. Three.   July 15, 1955.]

In re EARL LEROY STEINER, a Minor.

Nathan Newby, Jr., for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), and Jere J. Sullivan, Deputy District Attorney, for Respondent.

ASHBURN, J. pro. tem.*—This is an appeal from an order declaring Earl Leroy Steiner, a minor, to be a ward of the juvenile court under subdivision (m) of section 700, Welfare and Institutions Code and placing him in the custody of the probation officer for integration in the forestry camp program. Said section 700, subdivision (m) provides that jurisdiction of the juvenile court extends to any person under the age of 21 years who "violates any law of this State or any ordinance of any town, city, or county, of this State defining crime." Section 735 provides for an adjudication declaring a minor person to be a ward of the juvenile court upon finding that he comes within the provisions of said section 700. This proceeding was instituted by a petition charging that the minor Steiner "wilfully and unlawfully used force or violence upon the person of Paul Emil Laurin by striking the said person . . . about the face with his fist and kicking him in the shins; thereby violating Penal Code Section 242, BATTERY." After a hearing the court caused a minute order to be made, as follows: ". . . The court finds the allegations of the petition filed December 14, 1954, true; and the petition is sustained. Minor is declared a ward of the Juvenile Court under subdivision M, Section 700, Welfare and Institutions Code. The court finds it is to the best interests of the minor that his custody be taken from the parents, and his custody is taken from the parents. Minor is ordered released to the custody of the probation officer for integration in the forestry camp program. The probation officer is authorized to transport the minor to and from Juvenile Hall for medical care when necessary. The minor's camp earnings are ordered impounded and released to him upon his discharge from camp. This matter is continued to the non-appearance calendar of January 20, 1956, for further report. Minor is ordered detained by Sheriff (Biscailuz Center recommended) pending camp placement." From this order the appeal is taken.

The evidence consisted mainly of the testimony of said Paul Laurin, said Earl Steiner, one Richard Prell, and a probation officer's report. (Such report was, of course, properly considered by the court.) *In re Halamuda*, 85 Cal.App. 2d 219, 223 [192 P.2d 781]; *In re Jones*, 34 Cal.App.2d 77, 82 [93 P.2d 185].) The evidence is sufficient to sustain the following implied findings, which were presumptively made. Steiner, aged 17 years, was in frequent trouble at

---

*Assigned by Chairman of Judicial Council.

school because of fighting and truancy, being suspended twice; had been the subject of numerous complaints about the fast and noisy driving of his car. He was living with his father who defended his conduct and rationalized it on all occasions. On December 5, 1954, at about 7 p. m., young Steiner, Richard Prell and another boy were in the street, Borson near Ardis, in Bellflower. Mr. Laurin drove his automobile from Ardis into Borson at a moderate speed and saw the boys some 50 or 100 feet ahead of him. As he noticed them Steiner fell down onto the street and Laurin brought his car almost to a stop. Steiner got up at once, had no fear of being run over, but as Laurin passed slowly by, began to curse him, calling him a son of a bitch. Laurin by that time was a few feet past the boy, but this nettled him and he backed his car to talk to Steiner. Thereupon Steiner yelled ''You want to fight?'' grabbed the door handle on the driver's side, opened the door and started to hit Laurin, who tried to push and kick him away. At this juncture Prell, from the right side of the car hit Laurin, who was pulled down to the seat, pummeled by both of them; he was blowing his horn and neighbors began to arrive; the boys ran away from the scene. Steiner gave a version which was contrary to that of Laurin in most respects. For instance he said that Steiner called him to the car and started arguing about his driving, then kicked him in the head and knocked him out, knocked him clear across the street. Of course, the court had the prerogative and the duty of accepting that testimony which appeared to him to be credible, and the record as a whole indicates he made no mistake in accepting the story of Laurin rather than that of Steiner.

Counsel for appellant attacks the testimony of Laurin as contradictory and inherently improbable, but the argument rises no higher than a showing of a conflict calling upon the judge to accept the true and reject the false. See *Murphy* v. *Ablow,* 123 Cal.App.2d 853, 858 [268 P.2d 80], as to the applicable rule on review.

Counsel also complains that prejudicial error occurred through denial of his motion for a continuance in order to present witnesses to impeach the testimony of Laurin. Steiner had testified that Laurin and others had previously threatened him several times about driving his car too fast, saying ''they were going to pull me out of my car and slap something out of me.'' This was flatly denied by Laurin. After the court had announced its ruling the following occurred. ''MR.

Newby: Your Honor, one question I would like to ask. We have time to produce the witnesses who were present at the time that this man threatened Earl, because if we prove that, then he has committed perjury, and I know that we are going to press it. The Court: All right. You press your perjury charges, because as far as I am concerned, I am only concerned with this thing here that I have before me, the boys who were in this court. We are working in the interests of the minor.'' No surprise was asserted, no witnesses were named, and no assurance given as to what testimony any of them would give, —either by affidavit or oral assurance of counsel. Indeed, counsel's own confidence in his move was not very apparent, —''. . . if we prove that, then he has committed perjury, and I know that we are going to press it.'' (Emphasis added.) ██ ''The mere statement by counsel that additional time was needed, and that some witness (unnamed and unidentified) might give material testimony, without a supporting affidavit in either case, presents no issue either before the trial court or before this court on an appeal from the judgment.'' (*People* v. *Schenk*, 19 Cal.App.2d 503, 505 [65 P.2d 895].) See also 12 Cal.Jur.2d § 38, p. 149; 12 Cal.Jur.2d § 39, p. 150. ██ Moreover, ''[i]t is the rule that a continuance is properly refused if the testimony of the absent witness would only tend to impeach a witness of the adverse party.'' (*Rose* v. *Tandowsky*, 80 Cal.App.2d 927, 933 [183 P.2d 347].) See also 12 Cal.Jur.2d § 37, p. 149. There was no abuse of discretion in this matter and hence no valid ground for complaint.

Appellant asserts denial of a fair trial because of manifest prejudice of the trial judge. ██ To get true perspective one must recognize that the instant proceeding was not a trial in the ordinary sense of the word. It is designed to be informal to a marked degree. It ''is more in the character of a guardianship whereby the minor is relieved of the stigma of a criminal conviction by placing him upon probation with individuals or in institutions having the facilities to give him corrective care, supervision and training. (*People* v. *Renteria*, 60 Cal.App.2d 463, 470 [141 P.2d 37].)'' (*In re Dargo*, 81 Cal.App.2d 205, 207 [183 P.2d 282].) See also *In re Jones, supra,* 34 Cal.App.2d 77, 82; *In re Halamuda, supra,* 85 Cal.App.2d 219, 222-223.

██ And there is nothing in the law to the effect that a judge cannot be prejudiced against unlawful conduct, or that marked disapproval of conduct disclosed by the evidence

is prejudice within the recognized connotation of that term.
"From these authorities the rule appears to be that when
the state of mind of the trial judge appears to be adverse
to one of the parties but is based upon actual observance of
the witnesses and the evidence given during the trial of an
action, it does not amount to that prejudice against a litigant
which disqualifies him in the trial of the action.    ■    It is
his duty to consider and pass upon the evidence produced
before him, and when the evidence is in conflict, to resolve
that conflict in favor of the party whose evidence outweighs
that of the opposing party.  The opinion thus formed, being
the result of a judicial hearing, does not amount to that bias
and prejudice contemplated by section 170, subdivision 5, of
the Code of Civil Procedure as a basis for a change of venue
or a change of judges." (*Kreling* v. *Superior Court*, 25 Cal.
2d 305, 312 [153 P.2d 734].)  To the same effect are *Guard-
ianship of Jacobson*, 30 Cal.2d 312, 317-318 [182 P.2d 537];
*McEwen* v. *Occidental Life Ins. Co.*, 172 Cal. 6, 11 [155 P.
86]; *People ex rel. Department of Public Works* v. *McCul-
lough*, 100 Cal.App.2d 101, 111 [223 P.2d 37]; *People* v.
*Sweet*, 19 Cal.App.2d 392, 396 [65 P.2d 899].  The remarks
of the judge of which complaint is made are clearly within
this category.  There is no substance to the charge that the
judge was prejudiced against Steiner individually or that he
did not give him a fair hearing.

It is also argued that the judge failed to make written
findings of fact, that this constituted error and "deprives
this court of jurisdiction," meaning the juvenile court.  Re-
liance is placed on section 785 Welfare and Institutions Code
and the cases of *In re Matter of Hill*, 78 Cal.App. 23
[247 P. 591]; *In re Brodie*, 33 Cal.App. 751 [166 P. 605]
and *In re Spiers*, 15 Cal.App.2d 487 [59 P.2d 838].  Exam-
ination of each of those cases reveals that there was no finding
of facts in a proceeding wherein the juvenile court statute
specifically required such finding (in the Spiers case the
so-called findings were held to be mere conclusions).  But
none of them holds that a statute requiring findings in a
proceeding such as this makes written findings necessary.

Section 785 Welfare and Institutions Code (mislabeled
784 in appellant's brief) reads as follows: "Whenever the
procedure prescribed in the foregoing sections of this article
has been followed, the juvenile court may make a final written
order signed by the judge presiding in such court, judicially
depriving the parents of the custody and control of a person

who should be declared free from the custody and control of his parents; but nothing in this section shall be construed to impair the right of the court to make orders or commitments under any other section of this chapter." It does call for a written order signed by the judge; but, as respondent points out, it applies only to a proceeding under "this article" which is article 8 of chapter 2, dealing with proceedings to declare a minor free from custody and control of his parents. And the section expressly disclaims any application to any proceeding "under any other section of this chapter." The instant proceeding falls within article 7, "A Proceeding to Declare a Person a Ward of the Juvenile Court" etc. That article contains two sections which are pertinent. Section 735: "When any person under the age of twenty-one years, alleged to come within the provisions of section 700, is found by the court or judge to come within the said provisions, the court shall adjudge the person to be a ward of the juvenile court and shall in its judgment make a finding of the facts upon which the court exercises its jurisdiction over such person as a ward of the juvenile court. The court shall thereupon make such order or orders, in accordance with such findings, as may be necessary for the care of such ward of the juvenile court. All commitment and recommitment orders shall be in writing, and shall be signed by the judge of the juvenile court." And section 739: "In all cases the court may determine whether or not the parents or guardian shall exercise any control of a ward of the juvenile court or of any other minor person concerning whom a petition has been filed in accordance with the provisions of sections 721 and 722, and may define the extent of control permitted; but no ward of the juvenile court shall be taken from the custody of his parent or legal guardian without the consent of the parent or guardian, unless the court finds one of the following facts: . . .

"(d) That the welfare of the person requires that his custody be taken from his parent or guardian."

The necessity of written findings of fact under these sections has been considered in *In re Hartman*, 93 Cal.App.2d 801, 807 [210 P.2d 53] (§ 735); *In re Ortiz*, 74 Cal.App.2d 810, 813-817 [169 P.2d 664] (§ 739); *In re Etherington*, 35 Cal.2d 863, 868-869 [221 P.2d 942] (§ 739). In each instance oral findings were held to be sufficient. This was likewise the holding in *Knight* v. *Superior Court*, 102 Cal.App.2d 211, 215 [227 P.2d 62], a matter arising under sections 734

and 834 Welfare and Institutions Code having to do with minors found unfit for consideration under the Juvenile Court Law.

██ The exact language of section 735 deserves attention. It says ". . . the court shall adjudge the person to be a ward of the juvenile court and shall in its judgment make a finding of the facts upon which the court exercises its jurisdiction. . . ." Considered independently of the ruling in Hartman, *supra,* this implies a necessity for written findings if the judgment is required to be in writing. But it is not so specified with respect to the judgment. ██ And the law pertaining to judgments generally recognizes the propriety of an oral pronouncement which is carried into the court minutes. The judge's signature to a written judgment is not essential. (*Brown* v. *Superior Court,* 70 Cal.App. 732, 735 [234 P. 409]; *In re Cook,* 77 Cal. 220, 227 [17 P. 923, 19 P. 431, 11 Am.St.Rep. 267, 1 L.R.A. 567]; *Crim* v. *Kessing* 89 Cal. 478, 488 [26 P. 1074, 23 Am.St.Rep. 491].) ██ Except where findings are specifically required (as in Code Civ. Proc., § 632) a judgment is rendered when decision is announced and carried into the minutes. (*Brown* v. *Superior Court, supra,* 70 Cal.App. 732, 734; *Davis* v. *Rudolph,* 80 Cal.App.2d 397, 407-408 [181 P.2d 765]; *Carpenter* v. *Pacific Mut. Life Ins. Co.,* 10 Cal.2d 307, 327 [74 P.2d 761].) "It is a matter of trial court procedure whether the court chooses to make its final decision by the entry in the minutes of an order without a direction that a written order be prepared, signed and filed, or elects to enter a direction that a formal order be prepared. (*Gwinn* v. *Ryan,* 33 Cal.2d 436 [202 P.2d 51].)" (*Herrscher* v. *Herrscher,* 41 Cal.2d 300, 304 [259 P.2d 901].) See also *Steen* v. *Board of Civil Service Comrs.,* 26 Cal.2d 716, 727 [160 P.2d 816, 160 A.L.R. 863]; *E. Clemens Horst Co.* v. *Federal Mut. Liab. Ins. Co.,* 22 Cal. App.2d 548, 549 [71 P.2d 599]; *Pessarra* v. *Pessarra,* 80 Cal.App.2d 965 [183 P.2d 279]; 3 Cal.Jur.2d § 53, p. 484.

██ Section 735 concludes with a requirement that all commitment orders "shall be in writing, and shall be signed by the judge of the juvenile court." No such provision being made as to findings and judgment the contrasting treatment in the same section requires a holding that the findings and judgment do not have to be in writing. But if a writing were thereby required the minute order would be sufficient compliance. This follows from the ruling in *Cox* v. *Tyrone Power Enterprises, Inc.,* 49 Cal.App.2d 383, 391 et seq.

[121 P.2d 829], wherein a minute order was held to be a compliance with the requirement of section 657 .Code of Civil Procedure that, in granting a motion for new trial on the ground of insufficiency of the evidence, "the order shall so specify this in writing. To same effect is *Broderick* v. *Sutherland,* 94 Cal.App.2d 694, 695 [211 P.2d 364]. There was no failure to comply with the statute in the case at bar with referenec to the manner or form of findings.

▋ Counsel for appellant assigns as one of the alleged errors that: "The Court erred when it failed to sign written findings of fact and the judgment of commitment." But nothing further is said in the brief about the commitment. The argument is that there was a failure to make written findings, which matter we have decided. A point which is merely suggested by appellant's counsel, with no supporting argument or authority, is deemed to be without foundation and requires no discussion. (4 Cal.Jur.2d § 484, p. 318.) No other matters merit comment.

The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.